Douglas MEEKS, etc.,
Plaintiff-Appellant,

v.

Richard D. BERKBUEGLER and State
Farm Mutual Automobile Ins. Co.,
Defendants-Respondents.

No. 43510.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 9, 1982.

Motion for Rehearing and/or Transfer
Denied April 16, 1982.

Application to Transfer Denied
May 17, 1982.

Stephen F. Meyerkord, William R. Kirby,
St. Louis, for plaintiff-appellant.

Ben Ely, Jr., Ray E. White, III, Korten-
hof & Ely, St. Louis, for defendants-respon-
dents.

SNYDER, Judge.

Plaintiff appeals from a granting of defendant-respondent State Farm Mutual Automobile Insurance Company's[1] motion for directed verdict at the close of appellant's evidence. The action arose from an off-road accident between appellant's motorcycle and defendant Richard Berkbuegler's dune buggy. Appellant sued respondent State Farm pursuant to the uninsured motor vehicle provision of appellant's automobile liability insurance policy. Appellant's claim against individual defendant Berkbuegler was dismissed without prejudice after State Farm's motion for directed verdict was granted.

The trial court granted the motion for a directed verdict on the ground that "there is no coverage in this type of situation," meaning coverage under the uninsured motorist section of the policy. This court agrees with the trial court and affirms the judgment.

Appellant argues the trial court erred in granting respondent's motion for a directed verdict for three reasons. First, he says appellant's evidence raised an issue of fact whether the dune buggy fit within the policy's definition of an uninsured motor vehicle. Second, he argues the provision purportedly excluding the dune buggy from the definition of an uninsured motor vehicle is ambiguous and should be construed against respondent. Third, he maintains the exclusion is void as against public policy.

The accident occurred on June 7, 1977 on the grassy part of the Interstate 55 right-of-way near the Gasconade Street entrance ramp in St. Louis, Missouri. Appellant and Richard Berkbuegler were riding their vehicles up and down the hill located there. Appellant was riding a Kawasaki trail bike and Berkbuegler a four wheel dune buggy type vehicle, the exact nature of which is in dispute. Appellant, then age 15, suffered serious injuries in a collision between the two vehicles.

Berkbuegler assembled the dune buggy chassis from a kit he purchased from Chenowth Racing Products, Inc. Berkbuegler followed the instructions in the kit when he welded the frame together. Berkbuegler then added a Volkswagen engine and transmission and other Volkswagen parts to complete the buggy.

The Volkswagen parts were installed according to the Chenowth plan. Berkbuegler then added additional equipment according to the Chenowth plan and still more equipment which was necessary so that the vehicle could be registered and licensed. The added equipment consisted primarily of lights, brakes and seat belts. Berkbuegler then secured a state title and license for the buggy.

The resulting vehicle was essentially a skeleton of metal tubing. It had no external shell of any kind. It had no windshield. The passenger compartment was completely exposed to the elements. The engine was also completely exposed. The front wheels were standard Volkswagen wheels and tires. The rear wheels were slightly larger than standard Volkswagen wheels and had "X" tread tires, similar to snow tires, mounted on them. It was, however, licensed for use on public roads.

Berkbuegler testified that he built the vehicle primarily for off-the-road, recreational purposes. He said he modified the original Chenowth design and licensed the vehicle so that, if the need arose, he could take the buggy out on the street without fear of getting a ticket.

Berkbuegler used the dune buggy primarily on weekends at state parks. He towed the buggy to the parks rather than driving it there on the highway. He testified that in three months he drove the buggy to work three times. He also occasionally drove the buggy in the evening on short trips to friends' houses. Berkbuegler carried no liability insurance on the dune buggy.

1. State Farm Mutual Automobile Insurance Company will be referred to either as "State Farm" or "respondent" in this opinion.

Appellant was covered by a State Farm liability insurance policy. The policy included insurance for injuries caused by an uninsured motor vehicle. The policy's definition of "uninsured motor vehicle" read in part:

"Uninsured Motor Vehicle—Means:

1. A land motor vehicle not insured or bonded for bodily injury liability at the time of the accident; . . .

An uninsured motor vehicle does not include a land motor vehicle:

.    .    .    .    .

5. designed for use mainly off public roads except while on public roads; . . .

State Farm maintained that the dune buggy was a vehicle designed mainly for use off public roads, and, because the accident occurred off public roads, the dune buggy was not an uninsured motor vehicle under the policy.

Appellant first argues that the evidence raised an issue of fact whether the dune buggy was a vehicle designed for use mainly off public roads and therefore the granting of a directed verdict was error. The point is ruled against appellant.

▪ Granting a directed verdict at the close of plaintiff's case is a drastic action which should be taken only when all the evidence and reasonable inferences therefrom are so strongly against the plaintiff that reasonable persons could not differ. *McCarthy v. Wulff*, 452 S.W.2d 164, 168[3] (Mo.1970); *Kaelin v. Nuelle*, 537 S.W.2d 226, 229[1–4] (Mo.App.1976).

▪ No reasonable person, however, would conclude that the dune buggy in question was anything other than a land vehicle "designed for use mainly off public roads." The original designers clearly intended the buggy to be used off the road. The original Chenowth design did not even meet the requirements for state licensing. Berkbuegler built the vehicle primarily to use off public roads and actually used the vehicle primarily off public roads.

The vehicle had no exterior shell; it had no windshield. The vehicle was little more than a four-wheeled rail with a roll-cage. That Berkbuegler added headlights, taillights, seat belts, rearview mirrors and brakes and licensed the vehicle so that he would not get a ticket if he drove it on the street, did not transform it into a standard on-the-road vehicle. This court holds appellant failed to raise an issue of fact about the nature of the vehicle.

Appellant next argues that the term "designed for use mainly off public roads except while on public roads" is ambiguous and therefore should be construed against respondent. The point is meritless.

Appellant insists the word "designed" in particular is ambiguous because it does not identify whose design should be considered. This court does not agree. The word "designed" clearly implies the plans of those individuals who engineered the vehicle originally plus the plans of any person who significantly modified the vehicle. The language is not ambiguous. "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of the policy." *Harrison v. MFA Mutual Insurance Co.*, 607 S.W.2d 137, 142[6, 7] (Mo. banc 1980). The clause is not ambiguous. There was no error here.

Appellant's final point is that the clause is void as against public policy. He maintains the trial court, therefore, erred in concluding, based upon the clause, that appellant failed to establish a claim against respondent. Appellant argues the clause violates the public policy embodied in the uninsured motor vehicle statute, § 379.203, RSMo. 1978.[2] The point is ruled against appellant.

Section 379.203 requires that all automobile liability insurance policies include insurance for damages legally recoverable from owners or operators of uninsured motor vehicles, for injuries resulting from accidents caused by such vehicles.

▪ The policy behind this section is to provide the insured motorist with at least

**2.** All statutory citations are to RSMo. 1978 un-     less otherwise indicated.

the same amount of protection as would have been provided if the tort-feasor had complied with the Motor Vehicle Safety Responsibility Law, § 303.010, et seq. *Harrison v. MFA Mutual Insurance Co., supra* at 144–145[15]; *Otto v. Farmers Insurance Co.*, 558 S.W.2d 713, 717[3] (Mo.App.1977).

■ The Motor Vehicle Safety Responsibility Law requires the posting of security or the suspension of an operator's license upon the report of a motor vehicle accident that has resulted in greater than $100 damage or bodily injuries or death. § 303.020. The insurance policy clause in question therefore violates public policy if it reduces the insured motorist's protection below the level of protection that would have been provided if Berkbuegler had complied with the Safety Responsibility Law.

The policy clause in question is a definitional section, defining motor vehicle as excluding land vehicles designed for use mainly off public roads. The Safety Responsibility Law definition of motor vehicle provides:

"§ 303.020 Definitions . . .

(5) 'Motor vehicle', a self-propelled vehicle which is designed for use upon a highway, including trailers designed for use with such vehicles (except traction engines, road rollers, farm tractors, tractor cranes, power shovels, well drillers and motorized bicycles, as defined in section 307.180, RSMo.), and every vehicle which is propelled by electric power obtained from overhead wires but not operated upon rails; . . .

The Responsibility Law clearly does not include off-road vehicles in its definition of motor vehicles. The definition limits the term "motor vehicle" to vehicles "designed for use upon a highway." The Motor Vehicle Safety Responsibility Law does not require compliance of owners and operators of off-road vehicles involved in off-road accidents such as this.

Respondent may, therefore, exclude such vehicles when off public roads from its uninsured motor vehicle coverage without reducing such coverage below the level of protection that would have been provided if the tort-feasor had complied with the Safety Responsibility Law. Research has disclosed no cases involving exactly the same facts as those in these cases at bar, but Missouri courts have consistently upheld similar policy exclusions from uninsured motor vehicle coverage. *E.g., Harrison v. MFA Mutual Insurance Co., supra; Ward v. Allstate Insurance Co.*, 514 S.W.2d 576 (Mo. banc 1974); *Brake v. MFA Mutual Insurance Co.*, 525 S.W.2d 109 (Mo.App.1975), *cert. denied* 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 126 (1975). *See also*, cases from other jurisdictions cited in Harrison *supra*, at 144–145[15]. The policy exclusion is not void as against public policy.

Appellant cites a number of cases from other jurisdictions. Most of these cases, however, involve dissimilar language in the statute or the policy and turn on the ambiguity of that language.

The only case involving similar policy and statutory language is *Rooney v. Detroit Automobile Inter-Insurance Exchange*, 94 Mich.App. 448, 288 N.W.2d 445 (1979). In that case the insured was involved in an accident with a snowmobile. The accident, however, occurred on a public road. The court determined the insurer had to provide uninsured motorist coverage because the accident happened on a public road. The court clearly indicated that coverage would not have been required if the accident occurred off a public road. The case is, therefore, distinguishable.

The judgment is affirmed.

REINHARD, P. J., and CRIST, J., concur.