STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Appellant,

v.

Joseph M. STOCKLEY, Donna McCarrison, Amanda Cox, Rebecca McCarrison and Margerie McCarrison, Respondents.

No. ED 84200.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Jason W. Corray, Collinsville, IL, for appellant.

Eric C. Young, John Bitzer (co-counsel), Belleville, IL, co-counsel for appellant.

Morry S. Cole, St. Louis, MO, for respondent.

## OPINION

GLENN A. NORTON, Judge.

State Farm Automobile Insurance Company appeals the judgment declaring that its policy covers claims against Joseph Stockley arising from his use of a baggage tug on the tarmac at the airport. We reverse.

## I. BACKGROUND

Joseph Stockley was a baggage handler for Trans World Airlines. He used a four-wheeled vehicle called a tug to transport baggage in the tarmac area at Lambert St. Louis International Airport. While operating the tug, Stockley struck and killed another TWA employee, and the decedent's family filed a wrongful death claim against Stockley. The State Farm policy covering Stockley's personal car extends liability coverage to accidents arising from his use of a non-owned car. "Car" is defined in the policy as a "land motor vehicle with four or more wheels, which is designed for use mainly on public roads." State Farm filed the instant petition, seeking a declaration that the policy provides no coverage for Stockley's use of the tug because the tug was not designed for use mainly on public roads. After a bench trial, the court concluded that the tug was designed for use on the airport tarmac, which is a public road, and entered judgment declaring that the policy covered the tug.

## II. DISCUSSION

### A. Standard of Review and Burden of Proof

Generally, we review court-tried cases under the standards set forth in *Murphy v. Carron* and will affirm the judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. 536 S.W.2d 30 (Mo. banc 1976). "In a court-tried declaratory judgment action, however, interpretation of an insurance policy is a question of law, and the trial court receives no deference where resolution of the controversy is a question of law." *Automobile Club Inter–Insurance Exchange v. Medrano*, 83 S.W.3d 632, 637 (Mo.App. E.D.2002). Only if an ambiguity within the policy necessitates a factual determination will the standards set forth in *Murphy* govern. *Id.* Here, neither party argues that the policy is ambiguous, and our review is de novo.[1] *See id.* Moreover, the underlying facts are not in dispute in this case, and, thus, application of the insurance policy to those facts is also a matter of law. *See Hunt v. Capitol Indemnity Corp.*, 26 S.W.3d 341, 342 (Mo. App. E.D.2000).

The burden of proving coverage is on the insured, despite the insured's denomination as defendant in a declaratory judgment action. *Medrano*, 83 S.W.3d at 638. Stockley contends that State Farm had the burden of proof. He, and the trial court, cite to *Safeco Insurance Company of America, Inc. v. Wood*, in which this Court recited the well-known principle of law that "[w]hen an insurance company seeks to escape coverage based on policy exclusions, the burden is on it to establish the applicability of the exclusion." 948 S.W.2d 182, 183 (Mo.App. E.D.1997).[2] But this case involves policy *definitions*, not policy exclusions. The policy in this case extends liability coverage to non-owned cars, and, thus, coverage depends on the definition of "car" in the policy. The issue here is not whether an exclusion in the policy negates otherwise applicable coverage for the claims against Stockley. Rather, the question is whether there is coverage in the first place. It is Stockley's burden to prove coverage. *See Universal Reinsurance Corp. v. Greenleaf*, 824 S.W.2d 80, 83 (Mo.App. E.D.1992) (rejecting similar reliance on law regarding insurer's burden to prove exclusion; where issue is coverage under policy definitions, not applicability of exclusion, insured bears burden of proof); *see also Citizens Insurance Company of America v. Leiendecker*, 962 S.W.2d 446, 451 (Mo.App. E.D. 1998) (insured bears burden to prove that policy definition included claims).

### B. Design of the Tug

The parties agree that the tug was a four-wheeled land motor vehicle. The only issue is whether it was "designed for use mainly on public roads." In determining whether a dune buggy was covered by

---

1. Although by setting forth the rules for interpreting ambiguous language in an insurance policy, Stockley implies that the policy is ambiguous, he does not actually assert that any particular language in the policy is ambiguous. As discussed in section B, even if he had, we find no ambiguity in the relevant phrase "designed for use mainly on public roads."

2. Both Stockley and the trial court misstate that *Safeco* held that when insurance company "relies upon a policy definition to deny coverage," the burden is on the insurer to prove facts that warrant the exclusion. *Safeco* says nothing about policy definitions. At issue in *Safeco* was the applicability of a policy exclusion, and the case was disposed on appeal based on the insurer's failure to produce with its motion for summary judgment all the relevant policies. 948 S.W.2d at 184.

a virtually identical phrase in another State Farm policy—"designed for use mainly off public roads"—this Court held that the policy was not ambiguous simply because it did not define whose designs should be considered:

> The word "designed" clearly implies the plans of those individuals who engineered the vehicle originally plus the plan of any person who significantly modified the vehicle. The language is not ambiguous.

*Meeks v. Berkbuegler*, 632 S.W.2d 24, 26 (Mo.App. E.D.1982). In *Meeks*, the directed verdict in favor of State Farm was affirmed based on evidence that the original designers clearly intended the dune buggy to be used off the road, that the original manufacturer's design did not even meet the requirements for licensing and that the consumer, who built the vehicle from a kit and added equipment to qualify it for licensing, planned to use the buggy primarily off public roads and actually used the vehicle primarily off public roads. *Id.* at 26. The court also noted that, without an external shell, the vehicle was "little more than a four-wheeled rail with a roll-cage" and that, even with the consumer's modifications and licensing, the vehicle was not transformed into a "standard on-the-road vehicle." *Id.*

■ In this case, Stockley failed to prove that the tug was designed for use mainly on public roads. In fact, the only evidence of the plans of those individuals who engineered the vehicle originally supports the opposite conclusion. John Barclay was a manufacturing manager for 19 years with the company that made this tug. He was not an engineer. He testified that this model tug was designed basically to move baggage and was not designed for use mainly on public roads. Barclay had met with TWA to discuss its intentions to use the tug to move baggage

and freight. Besides baggage handling, Barclay testified, the tug was also used at industrial plants to move materials from rail docks to assembly lines and in the package industry to move air freight. Barclay testified that the tug would not be capable of performing on public roads because (1) it has a maximum speed of 13.8 miles per hour with a short wheel base that makes it difficult to control at higher speeds; (2) the headlights use 55–watt floodlight bulbs and have no dimmer switch or high/low beam function; (3) the front tires are slow-speed tires; (4) the cab windshield is not laminated; and (5) there are no brakes on the front wheels. Although the tug involved in this accident was manufactured shortly after Barclay started working for the company, the design work for that model tug had taken place and production had begun before Barclay started working there. He was not personally involved in the design work. Nevertheless, as a manufacturing manager, Barclay was responsible for all design aspects of the tug and reviewed the total design of the tug.

■ A mechanical and automotive engineer retained by State Farm also opined that, based on his visual inspection and a review of an operator's manual he received from counsel, this tug was not designed for use mainly on public roads. He had not investigated the original design plans of the manufacturer of the tug and did not know whether the tug had been modified since it was produced. In fact, the only testimony regarding modification of the tug came from Stockley, who claimed that the diesel engine had been replaced with a gas burning engine and that he believed the speed-governing device had been removed or disabled: "there was talk that people would remove the governors to make them move faster than they were

actually supposedly capable of doing, faster than the proposed speed limit."

There was no evidence to contradict the witnesses' conclusions that the tug was not designed originally for use mainly on public roads. Stockley challenges the probative value of these witnesses' testimony under *Meeks*, claiming that only those particular individuals who engineered the vehicle originally are qualified to testify about their design intentions. No such thing is required by *Meeks*. In fact, in *Meeks*, it appears that the only evidence of the plans of those who engineered the vehicle originally was the manufacturer's instruction manual accompanying the dune buggy kit and the testimony of the consumer who assembled it. *See id.* at 25. Here, Barclay was a 19–year employee of the manufacturer familiar with the design of this model tug. That he was not involved with the inception of the design does not render his testimony irrelevant.

Moreover—and more importantly to the disposition of this case given that it was Stockley's burden to prove coverage—if Barclay's and the retained expert's conclusions are irrelevant, then there was *no* evidence presented to the trial court of the tug's original design. The testimony about modifications was not specific to this tug and was speculative at best, based on "talk" Stockley had overheard; without more, his testimony does not show that the tug was modified for use mainly on public roads. It was Stockley's burden to prove that the tug was designed for use mainly on public roads. Thus, any failure to produce sufficient evidence of the plans of those who engineered this vehicle originally and the plans of anyone who modified it

is a failure of Stockley to meet that burden.

## C. Public Road

■ Stockley also argues that, if relevant at all, Barclay's and the retained expert's testimony shows at most that the tug was designed for use on the airport tarmac, which, he claims, is a public road. Stockley mischaracterizes the testimony. Both witnesses testified not just that the tug was designed to carry baggage, but also expressly concluded that the tug was not designed for use mainly on public roads. Nevertheless, under no construction of the term "public roads" and the evidence in this case does the airport tarmac constitute a public road.

Because "public roads" is not defined in the policy, we must give it "its common or usual meaning, or the meaning the policyholder would give it, not the insurers technical definition." *Camden v. State Farm Mutual Automobile Insurance Co.*, 66 S.W.3d 78, 81 (Mo.App. E.D.2001). Here, the parties give virtually the same meaning to the term "public roads," citing various cases in which our courts have discussed the nature of a public road. Common to all of these cases, including those cited by Stockley, is the notion that a road is only public if the public has the right to access the road.[3] The Southern District had concisely summarized what our courts have consistently held:

> Whether a road is public or private is determined by the extent of the right to use it, not by the extent to which that right is exercised or by the quantity of travel over it. A public roadway exists if the use of the roadway is free and common to all citizens, and [ ] the public

3. The only case Stockley cites that does not include a discussion of the publics right of access to a public road did not address the public nature of the roads in question at all. In *State ex rel. Clay County v. Hackmann*, the Court determined that the term "public road" in a statute was intended by the legislature to include city streets, based on its conclusion that "road" was a generic term for all kinds of ways, including streets. 270 Mo. 658, 195 S.W. 706, 708–09 (1917).

has actual access to it. This determination is not wholly dependent on the roadways length, or on the place to which it leads, or on the number ·of people who use it.

*Faustlin v. Mathis,* 99 S.W.3d 546, 549 (Mo.App. S.D.2003) (internal quotation marks and citations omitted) (citing *Chapman v. Lavy,* 20 S.W.3d 610, 613 (Mo.App. E.D.2000), *Pauls v. County Commission of Wayne County,* 26 S.W.3d 597, 598–99 (Mo.App. S.D.2000) and *Skinner v. Osage County,* 822 S.W.2d 437, 441 (Mo.App. E.D.1991)). *See also Kleeman v. Kingsley,* 88 S.W.3d 521, 523–25 (Mo.App. S.D. 2002); *Arrington v. Loehr,* 619 S.W.2d 888, 891 (Mo.App. S.D.1981); *State ex rel. Wabash Railway Co. v. Public Service Commission of Missouri,* 340 Mo. 225, 100 S.W.2d 522, 525–26 (1936) (defining "road" or "highway" as "nothing more than a strip of ground set aside, improved, and dedicated to the public for use as a passageway" and finding that passageways in question were public highways because they had been used by the public as roadways for many years, were improved at public expense and possessed all the characteristics of public highways); *City of St. Louis v. Bell Place Realty Co.,* 259 Mo. 126, 168 S.W. 721, 722–23 (1914) (term "public highway" in city ordinance included "all kinds of thoroughfares in which the public have a right of way or passage").

It is undisputed that on the airport tarmac there are roadways—that is, lanes with speed limits and traffic signals painted on the ground—to better organize the flow of traffic in that area. But it is also undisputed that the tarmac is restricted to the public. Only individuals that need to access the area for aircraft support and airline services are permitted access with appropriate clearance. There is a checkpoint at which all persons entering the tarmac must show identification to verify their permission to access the area. One attempting to enter the tarmac without the proper credentials would be taken into police custody and arrested. Although Stockley makes much of the fact, as did the trial court, that numerous people have the proper credentials to access the tarmac, the number of people who use the road is not determinative of its status as a public road.[4] *See Faustlin,* 99 S.W.3d at 549. Use of the tarmac roadways can hardly be said, even in theory, to be "free and common to all citizens" when only those with a particular need and permission are permitted access to the area. *See id.* Moreover, the public certainly does not have *actual* access to the tarmac roadways. *See id.* A road to which the general public is prohibited from entering unless they are properly credentialed based on their need to be in the area cannot, under the common and usual meaning of the term, be considered a public road.

**D. Summary and Disposition**

In sum, Stockley did not prove that the tug was a "car" as defined in the policy and, therefore, did not meet his burden to prove that the policy covered the accident arising from his use of that tug. State Farm was entitled to a declaration of no coverage, and the judgment to the contrary must be reversed.

**III. CONCLUSION**

The judgment is reversed.[5]

CLIFFORD H. AHRENS, P.J. and NANNETTE A. BAKER, J., concurring.

---

4. Nor is the fact that the airport is owned and operated by the City of St. Louis and patrolled by local police officers authorized to enforce traffic rules on the tarmac.

5. Stockley's motion to dismiss State Farm's brief for failure to comply with Rule 84.04(d) is denied. The brief's deficiencies have not impeded our ability to dispose of this case on

**Nancy VALENTA and Richard Valenta, Appellants,**

v.

**CITY OF ST. LOUIS, Respondent.**

**No. ED 84556.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2005.

Application for Transfer Denied Aug. 30, 2005.

Richard L. Hughes, St. Louis, MO, for appellant.

Patricia A. Hageman, St. Louis, MO, for respondent.

Before CLIFFORD H. AHRENS, P.J., GLENN A. NORTON, J., and NANNETTE A. BAKER, J.

*ORDER*

PER CURIAM.

Nancy Valenta ("Valenta") appeals the judgment in favor of the City of St. Louis ("the City") on her negligence action against the City. Valenta asserts numerous claims of error regarding evidentiary rulings by the trial court. Specifically, Valenta challenges the trial court's decision to allow her expert witness to be cross-examined regarding the total billing for forensic engineering in the year 2003, the trial court's exclusion of evidence of special damages, and the trial court's rulings on certain objections to the City's closing argument. Valenta also argues that the verdict was the result of bias, passion and prejudice of the jury, and she claims that the verdict was the result of juror misconduct. Finally, Valenta alleges that the cumulative effect of these errors warrants reversal.

We have reviewed the briefs of the parties and the record on appeal and find no error of law. No jurisprudential purpose would be served by a written opinion. However, the parties have been furnished with a memorandum opinion for their information only, setting forth the facts and reasons for this order.

The judgment of the trial court is affirmed in accordance with Rule 84.16(b).

the merits. *See Moore v. Swisher Mower & Machine Co., Inc.,* 49 S.W.3d 731, 736–37 (Mo.App. E.D.2001).

■

**Lonnie SNELLING, Appellant,**

v.

**STATE of Missouri, et al., Respondents.**

**No. ED 84845.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2005.

Application for Transfer Denied Aug. 30, 2005.

Lonnie Snelling, St. Louis, MO, pro se.

Chuck N. Chionuma, Lyra L. Johnson, Kansas City, MO, Gregg M. Lemley, Heidi K. Durr, Dan H. Ball, Lisa A. Keesling, Terrance J. Good, Jeremiah W. (Jay) Nixon, Atty. Gen., Tiffany B. Kieffer, St. Louis, MO, for respondents.

Before: CLIFFORD H. AHRENS, P.J., KATHIANNE KNAUP CRANE, J., and NANNETTE A. BAKER, J.

*ORDER*

PER CURIAM.

Lonnie Snelling, ("Appellant"), appeals *pro se* from a judgment dismissing an action he brought in the Circuit Court of St. Louis County. Appellant filed his First Amended Petition alleging ten causes of action and naming the following as defendants: the State of Missouri, five judges, Lou Fusz Motors Company, Michelin North America, Inc., General Motors Corporation, the law firms of Winning Basso, & Krupp, P.C., Bryan Cave, L.L.P., and Chionuma and Associates, P.C., and three individual Attorneys, Louis J. Basso, Jay L. Kanzler, Jr. and Uzoma A. Odofo. This litigation stems from the dismissal of lawsuits filed by Appellant more than six years ago. On Appeal, Appellant asserts seven points containing multiple arguments of error.

We have reviewed the briefs of the parties and the record on appeal and find the claims of error to be without merit. No jurisprudential purpose would be served by a written opinion reciting the detailed facts and restating the principles of law. The parties have been furnished with a memorandum opinion for their information only, which sets forth the facts and reasons for this order. We find no error and affirm pursuant to Rule 84.16(b).

■

**Daniel K. OGLESBY,
Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

**No. ED 84837.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 24, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 2005.

Application for Transfer Denied Aug. 30, 2005.

Amy M. Bartholow, Columbia, MO, for appellant.

Deborah Daniels, Karen L. Kramer, Asst. Attys. Gen., Jefferson City, MO, for respondent.

Before PATRICIA L. COHEN, P.J., KATHIANNE KNAUP CRANE, J., and ROBERT G. DOWD, JR., J.

*ORDER*

PER CURIAM.

Movant, Daniel K. Oglesby, appeals from the judgment denying on the merits his Rule 29.15 motion for post-conviction relief after an evidentiary hearing. We have reviewed the record on appeal and the briefs of the parties and find that the motion court's judgment is based on findings of fact that are not clearly erroneous. An extended opinion would have no precedential value. We have, however, prepared a memorandum opinion setting forth the reasons for our decision for the use of the parties only. We affirm the judgment pursuant to Rule 84.16(b).

Management Services, that the Commission erred in closing the record on Claimant's request for additional benefits before they submitted certain deposition testimony as it is not raised in a cross-appeal. *See Omaha Indem. v. Pall, Inc.*, 817 S.W.2d 491, 499 (Mo. App. E.D.1991).