

# Missouri Court of Appeals

### Southern District

### Division Two

SHELTER INSURANCE COMPANY,  )
)
    Plaintiff-Appellant,  )
)
vs.  )    No. SD33552
)
JEANIE VASSEUR,  )    **Filed: May 19, 2015**
MATTHEW VASSEUR, by and thru his  )
Guardian ad Litem, ADAM VASSEUR,  )
CHARLOTTE VASSEUR,  )
JACKIE STRYDOM,  )
ANDREA POSTELWAIT,  )
SARITA VASSEUR, and  )
MICHAEL VASSEUR,  )
)
    Defendants-Respondents.  )

APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

Honorable William E. Hickle

**REVERSED AND REMANDED IN PART AND AFFIRMED IN PART**

Shelter Mutual Insurance Company ("Shelter") appeals from the trial court's judgment against Shelter in a declaratory action case. Shelter raises six points on appeal. Shelter's first two claims have merit, but the remainder of the claims either are not preserved for appellate review or are moot. Thus, we reverse in part and affirm in part.

1

## Factual and Procedural Background

Jeanie Vasseur was married to Elmer Vasseur. Jeanie and Elmer had one minor son, Matthew, and one adult son, Adam.[1] On August 8, 2010, Matthew was driving Adam's 2006 Honda ATV on Missouri State Highway AA. Elmer was riding on the ATV behind Matthew. Matthew failed to negotiate a turn, causing the ATV to run off the road and hit a sign. Matthew was injured, and Elmer died at the scene.

At the time of the accident, Jeanie and Elmer had one farm owners' insurance policy and three automobile insurance policies issued by Shelter. Elmer and Jeanie were the named insureds on each of the policies. After the accident, Jeanie, Matthew, Adam, and other members of Elmer's family ("Respondents") sought the policy limits under each of the policies.

On March 3, 2011, Shelter filed a petition for declaratory judgment against Respondents seeking a declaration that there was no coverage under any of the policies. Shelter argued there was no coverage under the farm owners' insurance policy because Elmer was an insured under the farm owners' insurance policy and because the farm owners' insurance policy contained exclusions regarding bodily injury to an insured. Shelter argued there was no coverage under the automobile insurance policies because the ATV was not a "Motor Vehicle" as that term was defined in the automobile insurance policies.

---

[1] The individuals involved are referred to by their first names because they all have the same last name. No disrespect is intended.

After discovery, the parties filed a joint stipulation of facts and cross-motions for summary judgment. The trial court found the exclusions in the farm owners' insurance policy were ambiguous, and ordered summary judgment in favor of Respondents.

The trial court then found that a genuine issue of material fact remained regarding whether the ATV was a "Motor Vehicle" under the terms of the three automobile insurance policies. A bench trial was held on May 6, 2014. After receiving evidence, the trial court found the ATV was a "Motor Vehicle" and entered judgment for Respondents on all counts in Shelter's petition. Shelter appeals.

## Point I and Point II: Elmer Is an Insured

In its first and second points, Shelter argues the trial court erred in finding the farm owners' insurance policy provided both coverage to Matthew for damages arising out of the injuries and death of Elmer and for medical payments arising out of the injuries and death of Elmer because such damages were excluded from coverage under two different exclusions in section II of the farm owners' insurance policy. We agree.

When the trial court grants summary judgment, the appellate court "applies a *de novo* standard of review." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). Additionally, "interpretation of an insurance policy is a question of law, and the trial court receives no deference where resolution of the controversy is a question of law." *State Farm Mut. Auto. Ins. Co. v. Stockley*, 168 S.W.3d 598, 600 (Mo. App. E.D. 2005) (quoting *Automobile*

3

*Club Inter-Ins. Exch. v. Medrano*, 83 S.W.3d 632, 637 (Mo. App. E.D. 2002)).

"In construing the terms of an insurance policy, this court 'applies the meaning which should be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured.'" *Affirmative Ins. Co. v. Broeker*, 412 S.W.3d 314, 318 (Mo. App. E.D. 2013) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). An ambiguity exists when "the policy is reasonably open to different constructions." *Id.* (quoting *National Union Fire Ins. Co. v. Maune*, 277 S.W.3d 754, 758 (Mo. App. E.D. 2009)). "However, when the insurance policy is unambiguous, the court will enforce the policy according to its terms." *Id.* at 318-19. Furthermore, "[a] court is not permitted to create an ambiguity or distort the language of an unambiguous policy in order to enforce a particular construction that it deems more appropriate." *Progressive Northwestern Ins. Co. v. Talbert*, 407 S.W.3d 1, 9 (Mo. App. S.D. 2013) (quoting *Lynch v. Shelter Mut. Ins. Co.*, 325 S.W.3d 531, 535 (Mo. App. S.D. 2010)); *see also* *Burns*, 303 S.W.3d at 511 ("this Court will not add language to a policy.").

As part of the farm owners' insurance policy, Jeanie and Elmer purchased $100,000 worth of personal liability insurance and $1,000 worth of medical payments to others insurance. These coverages were in section II of the policy. The coverage provision for personal liability ("Coverage E") provided that Shelter would "pay all sums arising out of any one loss which an insured becomes legally obligated to pay as damages because of bodily injury or property damage and

4

caused by an occurrence covered by this policy." (Emphasis omitted). As applicable to this case, the coverage provision for medical payments to others ("Coverage F") provided that Shelter would pay medical expenses arising from bodily injury sustained somewhere other than the premises if that injury was "caused by the activities of an insured, or a farm employee, or a residence employee in the course of employment by an insured[.]" (Emphasis omitted).

The exclusions for section II were organized in three paragraphs, each with several numbered sub-paragraphs.[2] The first paragraph ("Exclusion Group A") began with the phrase "Under Personal Liability and Medical Payments To Others, we do not cover" and listed several types of risks typically covered by other types of insurance, as well as an intended acts exclusion. (Emphasis omitted). The second paragraph ("Exclusion Group B") began with the phrase "Under Personal Liability we do not cover" and listed several types of property damage, bodily injury for which there was workers' compensation payable, and in sub-paragraph 9 specifically excluded, "[b]odily injury to: (a) you; (b) your relatives residing in your household; and (c) any other person under the age of 21 residing in your household who is in your care or the care of a resident relative." (Emphasis omitted). The third and final paragraph ("Exclusion Group C") began with the phrase "Under Medical Payments To Others, we do not cover" and in sub-paragraph 2, listed several types of risk typically covered by other insurance and excluded "bodily injury to any insured under parts (a), (b) and (c) of the definition of insured." (Emphasis omitted).

---

[2] The pages of the farm owners' policy setting out the exclusions at issue in this point are reproduced in the appendix to this opinion.

At the summary judgment stage, Shelter argued no payment was due under the coverage for personal liability because of sub-paragraph 9 contained within Exclusion Group B. Shelter argued no payment was due under the coverage for medical payments to others because of sub-paragraph 2 contained within Exclusion Group C. The trial court disagreed, and entered summary judgment in favor of Respondents.

The trial court's entry of summary judgment with respect to the farm owners' insurance policy was incorrect because it ignored the plain language of the policy. The farm owners' insurance policy states that Exclusion Group A applies to both the personal liability coverage and the medical payments to others coverage, Exclusion Group B applies to the personal liability coverage, and Exclusion Group C applies to the medical payments to others coverage. The plain meaning of that list results in three possible applications:

1.     If an individual seeking coverage purchases personal liability coverage—Coverage E—only, the applicable exclusions are those in Exclusion Group A and Exclusion Group B.

2.     If an individual seeking coverage purchases medical liability coverage—Coverage F—only, the applicable exclusions are those in Exclusion Group A and Exclusion Group C.

3.     If an individual seeking coverage purchases both personal liability coverage and medical liability to others coverage, all the exclusions listed apply, but only to the respective coverages as indicated, *i.e.*, Exclusion Group A and Exclusion Group B to personal liability coverage and Exclusion Group

6

A and Exclusion Group C to medical liability to others

coverage.

This interpretation gives effect to the plain meaning of the language used. Under that meaning, there is no bodily injury coverage or medical payment coverage for Elmer because Elmer was a named insured.

Respondents attempt to avoid this conclusion by looking at the positioning of the language in the document. They suggest that the positioning of the various clauses renders them ambiguous. They state, "the only sensible interpretation of this language is that [Exclusion] Group A applies to policies with **both** coverages, while [Exclusion] Group B applies to policies insuring **only** liability, and [Exclusion] Group C applies to policies insuring **only** medical payments." Thus, they conclude that since Respondents purchased both coverages and since the exclusions upon which Shelter relies were not in Exclusion Group A then none of the exclusions apply in this case.

This argument fails because the policy language is not susceptible to the interpretation Respondents suggest. To create the meaning suggested by Respondents, additional language would have to be added to the policy. As written, the policy simply says that the exclusions in Exclusion Group A apply to both coverages, the exclusions in Exclusion Group B apply to only personal liability coverage—Coverage E—and the exclusions in Exclusion Group C apply to only to medical liability to others coverage—Coverage F. The language is not conditioned on which coverages were purchased. There is nothing in that language to suggest that the exclusions change when an insured purchases both coverages. To reach the result Respondents want, the policy would have needed

7

to include additional language. That language is not in the policy, and this Court will not add it. *See **Burns***, 303 S.W.3d at 511.

The trial court erred in finding the policy language was ambiguous. Point I and Point II are granted.

## Point III, Point IV, and Point V:  Denial of a Motion for Summary Judgment Is Not Appealable

In its third, fourth, and fifth points, Shelter challenges the trial court's determination regarding coverage under the three automobile insurance policies. Specifically, Shelter argues "[t]he trial court erred in granting summary judgment to Respondents and denying [Shelter's] motion for summary judgment on the issue of . . . coverage under three auto insurance policies[.]"  These points do not present any question for appellate review because they do not challenge a ruling in an appealable order or a ruling upon which an appealable order was based.

The points each challenge two of the trial court's actions. First, the points challenge the trial court's grant of summary judgment to Respondents regarding coverage under the automobile insurance policies. However, as Respondents correctly note, the trial court did not grant summary judgment on those issues. Rather, those claims were denied by the trial court on the summary judgment motion and were decided only after a court trial. Thus, the first portion of each of these points challenges a ruling that was never made.

The second portion of each point challenges the denial of Shelter's motion for summary judgment regarding the automobile insurance policies.[3]  The general rule is that "an order denying a motion for summary judgment is not a final judgment and therefore is not reviewable on appeal." ***Reeves v. Allstate Ins. Co.***, 327 S.W.3d 592, 598 (Mo. App. S.D. 2010).  Indeed, there is an exception to this rule "where the merits of the denied motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party[.]" ***Id.***  Here, however, there was no grant of summary judgment regarding the issues raised in these points; the issues addressed in these points were resolved by judgment after trial.[4]  Thus, the exception does not apply.

Point III, Point IV, and Point V are denied.

## Point VI:  Uninsured Motorist

In its final point, Shelter argues the trial court erred in finding coverage under both the farm owners' insurance policy and the uninsured motorist coverage of the automobile insurance policies because if there were coverage

---

[3] In the reply brief, Shelter notes its incorrect statement of the procedural posture, but maintains the denial of the motion for summary judgment was nevertheless incorrect and merits reversal. Shelter's treatment of this problem in its reply brief does not rectify the situation for two reasons. First, Shelter still challenges the denial of the motion for summary judgment, which is not an appealable order.  In fact, Shelter does not even attempt to argue the exception to the general rule applies.  Second, even if Shelter had modified its argument to present a reviewable claim, this Court could not address the claim.  "A reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal." ***Kells v. Missouri Mountain Properties, Inc.***, 247 S.W.3d 79, 84 n.7 (Mo. App. S.D. 2008).  The reason for this rule is that "a respondent has no opportunity to address" an argument presented for the first time in a reply brief. ***Berry v. State***, 908 S.W.2d 682, 684 (Mo. banc 1995).  "Assignments of error set forth for the first time in the reply brief do not present issues for appellate review." ***Id.*** (quoting ***In re Gilbert***, 563 S.w.2d 768, 771 (Mo. banc 1978)).

[4] Shelter does not challenge the judgment entered after trial in any of these three points.

9

under the farm owners' insurance policy, then the ATV was not an uninsured motor vehicle under the automobile insurance policies. Given our resolution of Point I and Point II, this claim is moot.

## Decision

The trial court's judgment with respect to the farm owners' insurance policy is reversed, and the case is remanded with directions to the trial court to enter judgment in favor of Shelter with respect to the farm owners' insurance policy consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS in separate opinion

GARY W. LYNCH, J. – CONCURS

# APPENDIX

Electronically Filed - SOUTHERN DISTRICT CT OF APPEAL - October 28, 2014 - 04:11 PM



THIS POLICY ISSUED BY:
SHELTER MUTUAL INSURANCE CO.

SHELTER INSURANCE COMPANIES

FARMOWNERS INSURANCE POLICY
DECLARATIONS

AGENT:
DAVID KEENEY
P O BOX 198
203 N GRAND
HOUSTON, MO          65483
417-967-4112

24-0A791-08

NAME AND ADDRESS OF INSURED:

REISSUE OF
POLICY NUMBER 24-72-003123225-0002
ATTACHED TO POLICY FORM NO: FO-3 (10-1986)
ATTACH THIS TO THE POLICY SHOWN ABOVE
REPLACING DECLARATIONS ON THAT POLICY

ELMER AND JEANIE VASSEUR
9904 LYNCH DR
BUCYRUS MO 65444-8105

THE LOCATION OF THE DESCRIBED PREMISES COVERED HEREUNDER IS:
FRAME, OWNER, 1 FAMILY DWELLING 80 ACRES LOCATED AT SECTION 10 TOWNSHIP 31 RANGE 10 NEAR
SUCCESS MO (COUNTY 0215)
POLICY PERIOD: FROM 03:59 P.M. MARCH 17, 2010 TO SEPTEMBER 17, 2010 AT 12:01 A.M. STANDARD TIME AT THE LOCATION OF THE
PROPERTY DESCRIBED; AND SUBJECT TO CONSENT OF THE COMPANY FOR TERMS OF SUCH DURATION EACH THEREAFTER AS THE REQUIRED
RENEWAL PREMIUM IS PAID BY THE INSURED AND RECEIVED BY THE COMPANY ON OR BEFORE EXPIRATION OF THE CURRENT TERM.
THE LIMIT OF THE COMPANY'S LIABILITY AGAINST EACH SUCH COVERAGE SHALL BE AS STATED HEREIN, SUBJECT TO THE TERMS
OF THIS POLICY.
THE INSURANCE APPLIES AS FOLLOWS:

| | | | SECTION I | | | SECTION II | |
|---|---|---|---|---|---|---|---|
| | A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. ADDITIONAL LIVING EXPENSE | E. PERSONAL LIAB (BODILY INJURY & PROPERTY DAMAGE) EACH OCCURRENCE | F. MEDICAL PYMT TO OTHERS PER PERSON | |
| COVERAGES | | | | | | | |
| LIMITS OF LIABILITY | 170000 | 17000 | 119000 | 34000 | 100000 | 1000 | |

ITEM DESCRIPTION:                                                                                  LIMITS
                FARM STRUCTURE COVERAGE AND/OR FARM PERSONAL PROPERTY COVERAGE
BARN, BUILDING, OR STRUCTURE          SHOP W/METAL ROOF, FRAME, TYPE 2,                      20000
  FULLY ENCLOSED, USE-SHOP
BARN, BUILDING, OR STRUCTURE          FARROWING HOUSE W/METAL ROOF, FRA                       1000
  ME, TYPE 3, USE-STORAGE
        ENDORSEMENTS ATTACHED TO AND FORMING PART OF THIS POLICY:
B-834.6-B          AMENDATORY ENDORSEMENT - HOW LOSSES ARE SETTLED (FARMOWNERS)
B-327.2-B          REPLACEMENT COST COVERAGE (COVERAGE C.)
B-697-B            INFLATION PROTECTION ENDORSEMENT
B-422.34-B         FO-3 EARTHQUAKE ENDORSEMENT - COVERAGE A,B,C          5% DEDUCTIBLE
B-557.1-B          LIMITED POLLUTION LIABILITY COV (SUBJ TO AGGREGATE LIMIT)               10000
B-725-B            AMENDATORY ENDORSEMENT
B-678-B            MISSOURI AMENDATORY ENDORSEMENT
B-601-B            LEAD POISONING EXCLUSION ENDORSEMENT
A-295-A            MO. PROPERTY AND CASUALTY GUARANTY ASSN. LIMITS OF LIABILITY

ANY LOSS BY PERILS INSURED AGAINST UNDER SECTION I OF THIS
POLICY IS SUBJECT TO A DEDUCTIBLE AMOUNT OF $2000

RECEIVED FOR THIS REISSUE          $ 787.00

PROT DEV CR ALLOWED

HEATING SYSTEM DISCOUNT ALLOWED

TRANSACTION: P.C.          PROTECTION CLASS: 09
H. O. CODE:     787.00     ZONE CODE: 40
POLICY TERM: SIX MONTHS    DATE ISSUED: 03-17-2010
                                        '09242009'

COMPANION DISC ALLOWED

MORTGAGEE:

PROGRESSIVE OZARK BANK
PO BOX 279
SALEM MO  65560-0279

COUNTERSIGNED BY _____
B-147.5-B                                              PAGE   1

1817 WEST BROADWAY • COLUMBIA, MISSOURI 65218-0001 • (573)445-8441

SHE0048

11

o**** ***r income, when **we** ask **you** to help **us** in ***tigate or defend any claim or suit.

(e) Any other reasonable expense incurred at **our** request.

(f) Cost of bail bonds up to $250 required because of accident or traffic law violation arising out of the use of any **land motor vehicle** to which this policy applies but **we** are not obligated to apply for or furnish such bonds.

3. **First Aid Expenses**
Expenses for immediate medical and surgical treatment for other persons at the time of the accident. **We** will pay only expenses which an **insured** incurs for treatment of **bodily injury** covered by this policy.

**EXCLUSIONS — SECTION II**
Under Personal Liability and Medical Payments To Others, **we** do not cover:

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment of:
   (a) aircraft;
   (b) any **land motor vehicle**, other than a **recreational motor vehicle**, owned or operated by or rented or loaned to an **insured**. **We** do provide coverage if the **land motor vehicle** is
      (1) used exclusively on the **insured premises** and not subject to motor vehicle registration; or
      (2) kept in dead storage on the **insured premises**;
   (c) any **recreational motor vehicle**, other than a golf cart while used for golfing, owned by an **insured**, if the **bodily injury** or **property damage** occurs away from the **insured premises**;
   (d) watercraft not located on the **insured premises**:
      (1) owned by or rented to an **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;
      (2) owned by or rented to an **insured** if it is a sailing vessel 26 feet or more in length; or
      (3) powered by one or more outboard motors

with more than 25 total horsepowe owned by an **insured**.
      (4) Subdivisions (1), (2) and (3) do not appl if **you** write **us** within 30 days of th acquisition date of such items that **yo** want coverage.
This exclusion does not apply to **bodily injury** t any **residence employee** or **insured farr employee** arising out of and in the course c employment by an **insured**.

2. **bodily injury** to a **farm employee** other than a **insured farm employee**, arising out of and in th course of employment by an **insured**.

3. **bodily injury** or **property damage** arising out c the rendering or failing to render professions services.

4. **bodily injury** or **property damage** arising out c **business** pursuits of an **insured**.
This exclusion does not apply:
   (a) to activities of the **insured** ordinarily incider to non-**business** pursuits;
   (b) with respect to coverage to the occasional c part-time **business** pursuits of an **insure** who is under 19 years of age.

5. **bodily injury** or **property damage** arising out c any premises owned, rented or controlled by a **insured** which is not an **insured premises**. Bu **we** will cover **bodily injury** to any **residenc employee** or **insured farm employee** arising or of and in the course of employment by an **insure** at such premises.

6. **bodily injury** or **property damage** expected c intended by an **insured**.

7. **bodily injury** or **property damage** arising out c war (declared or undeclared), civil wa insurrection, rebellion or revolution.

8. **bodily injury** or **property damage** which arise out of the transmission of communicable disease by the **insured**.

Under Personal Liability **we** do not cover:

1. liability assumed under any oral contract c agreement, or under any contract or agreemei in connection with any **business** of an **insurei** This exclusion does not apply to a warranty i goods or products.

2. **property damage** to property owned by ё **insured**.

3. **property damage** to property occupied or use

14

SHE0063

12

by an **insured** or rented to or in the care of an **insured**. But **we** will cover **property damage** to such property caused by fire, smoke or explosion.

4. **bodily injury** to any person if an **insured** has or is required to have a policy providing workers' compensation, non-occupational disease or occupational disease benefits covering the **bodily injury**.

5. **bodily injury** or **property damage** when an **insured** is covered under any nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted.

6. sickness, disease or death of a **residence employee** or **farm employee** unless written claim is made or suit is brought within 36 months after the end of the policy term.

7. **property damage** to:
   (a) goods or products, including containers, grown, raised, manufactured, sold, handled or distributed by an **insured** when the **property damage** arises out of such products; or
   (b) work performed by or for an **insured** when **property damage** arises out of such work.

8. **property damage** resulting from a substance released or discharged from aircraft.

9. **Bodily injury** to:
   (a) **you**;
   (b) **your** relatives residing in **your** household; and
   (c) any other person under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative.

Under Medical Payments To Others, **we** do not cover:

1. **bodily injury** to any person who is entitled to benefits which are provided or required to be provided under any workers' compensation, non-occupational disability or occupational disease law.

2. **bodily injury** to any **insured** under parts (a), (b) and (c) of definition of **insured**.

3. **bodily injury** from any nuclear reaction, radiation or radioactive contamination or any consequence of any of these.

4. any person while on the **insured premises** because a **business** is conducted or professional services are rendered on the **insured premises**.

5. **bodily injury** to any person, other than a residence employee or insured farm employee, if such person is regularly residing on the insured premises.

## CONDITIONS — SECTION II

1. **WHAT TO DO IN CASE OF BODILY INJURY OR PROPERTY DAMAGE**

   In the event of **bodily injury** or **property damage**, the **insured** must:
   (a) notify **us** or **our** agent as soon as possible. The notice must give:
      (1) **your** name and policy number;
      (2) the time, place and circumstances of the accident, **occurrence** or loss;
      (3) the names and addresses of injured persons and witnesses;
   (b) send **us** promptly any legal papers received relating to any claim or suit;
   (c) cooperate with **us** and assist **us** in any matter relating to a claim or suit;
   (d) if a loss covered under Physical Damage to Property of Others occurs, send **us**, within 60 days of the loss, sworn proof of loss. The **insured** shall also exhibit the damaged property if within the **insured's** control.

   The **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur expenses other than for First Aid Expenses at the time of accident.

2. **DUTIES OF AN INJURED PERSON - MEDICAL PAYMENTS TO OTHERS**

   The injured person or someone acting on behalf of the injured person will:
   (a) give **us**, as soon as possible, written proof of claim under oath if required;
   (b) authorize **us** to obtain medical and other records.

   The injured person shall submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require.

3. **LIMITS OF LIABILITY**

   Regardless of the number of **insureds**, injured persons, claims made, suits brought or locations shown, **our** liability is limited as follows:
   (a) As respects Personal Liability, the limit of liability stated in the Declarations is the total limit of **our** liability for all damages resulting from any one **occurrence**.

15

SHE0064



# Missouri Court of Appeals

## Southern District

### Division Two

SHELTER INSURANCE COMPANY,   )
                                       )
      Plaintiff-Appellant,   )
                                       )
vs.                                )     No. SD33552
                                     )
JEANIE VASSEUR,              )     **Filed: May 19, 2015**
MATTHEW VASSEUR, by and thru his   )
Guardian ad Litem, ADAM VASSEUR,   )
CHARLOTTE VASSEUR,          )
JACKIE STRYDOM,            )
ANDREA POSTELWAIT,        )
SARITA VASSEUR, and          )
MICHAEL VASSEUR,          )
                                     )
      Defendants-Respondents.   )

### APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

#### Honorable William E. Hickle

**CONCURRING**

      I concur. I write separately only to point out that the trial court's interpretation that the language of the Farm Policy is ambiguous is understandable. I believe the policy is not as clearly written as it should be, but I cannot conclude that the drafting is "ambiguous."

Nancy Steffen Rahmeyer, J. - Concurring Opinion Author

1