Jimmy Ray WILLIAMS, Appellant,

v.

CIMARRON INSURANCE COMPANY, Inc., Appellee.

No. 7561.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 14, 1966.

Rehearing Denied March 14, 1966.

Peery, Wilson & Jameson, Norman Whitlow, Wichita Falls, for appellant.

L. W. Anderson, Dallas, for appellee.

DENTON, Chief Justice.

This action was brought by Jimmy Ray Williams against Cimarron Insurance Company on an insurance policy seeking to recover medical, hospital, and funeral expenses under the medical payments provision of said policy. The trial court, without a jury, denied plaintiff's recovery and he has perfected this appeal.

This case was submitted on stipulated facts. On July 4, 1964, appellant, accompanied by his wife and minor son, were spectators at a race track located on private property in Oklahoma when one of the stock car racers came through the fence and struck Mr. Williams, his wife and son. The parents sustained personal injuries and the minor son received fatal injuries. The race track was not a public highway or a public road. The stock car racer which struck the Williams family was a stripped-down 1947 Ford sedan with a 1954 Mercury motor, which had been modified by the owner approximately one year prior to the accident. The racer had no tail or head lights; no glass in the windows, and used screen wire as a windshield; it had no horn or muffler; no rear or front bumper but had a safety bar in front of the radiator; it had no fenders or hood; it had heavy-duty tie rods and spindles and oversized tires; the speedometer cable was disconnected; it was not licensed in Oklahoma or any other state for operation on public roads or highways; and it was carried on a trailer to and from the race track or towed. The amount of the medical, hospital and funeral expenses incurred are stipulated and it was agreed that such charges were reasonable and necessary for the services rendered.

The sole question to be decided is not whether the stock car racer was an automobile, but whether it was an automobile as defined in the policy under the provision pertaining to "Automobile medical payments". The medical provisions of the policy are as follows:

"Coverage C—Automobile Medical Payments

'To pay all reasonable expenses incurred within one year from the date of

accident for necessary medical, surgical, and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:

\* \* \* \* \* \*

'Division 2. To or for each insured who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from, or through being struck by, an automobile.'

'Automobile defined. \* \* \*

'Under division 2 of the coverage C, the word "automobile" means a land motor vehicle or trailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads. \* \* \*' "

There appears to be no Texas case directly in point, however the case of Beagle v. Automobile Club Insurance Co., 176 N.E. 2d 542 (Ohio Com.Pl.) has interpreted the exact insurance provisions under identical circumstances. The only material difference in the facts of the two cases is that in the *Beagle* case the spectator at the race track was struck by a wheel which disengaged itself from the racer while engaged in a race. The court held: "such disengaged wheel is an 'automobile' within the meaning of the policy, provided that the entire vehicle meets the test of the whole definition". That question is not before us here as the vehicle itself struck appellant and his wife and son.

The Court in the *Beagle* case rejected the same contentions and arguments made by the insured in that case as are made here, and held the vehicle was not an automobile within the meaning of the definition of the policy. We are of the opinion that the *Beagle* case completely disposes of this case. The decision in that case can be summed up in the following language:

"This vehicle would therefore seem to be a land motor vehicle. However, the Exclusions clause specifically says the definition of such word 'automobile' does not mean a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads. This injury did not occur upon a public road so such proviso is not applicable. It is not a farm type tractor so such exception is also not applicable. But, is it other equipment designed for use principally off public roads? The Court thinks it is.

\* \* \* \* \* \*

"Plaintiff, however, says the words 'other equipment' refers to farm equipment under the rule of construction known as ejusdem generis and also that such exception is ambiguous and such ambiguity should be liberally construed in favor of the policy holder.

"The rule ejusdem generis is that when general words follow an enumeration of particular cases, such general words are held to apply to cases of the same kind as those which are expressly mentioned. In the first place if the exception was just the words 'a farm type tractor or other equipment' there would be some substance to this claim, but the language is not general but specifies that such equipment be designed for use principally off public roads. That, in effect is true also of farm tractors—they are designed for use principally on the farm and not on the highways. The Court feels this exception is not ambiguous and means just what it says. This auto racer was designed principally for use off the public road, and therefore is not an automobile within the meaning of the definition in the policy."

\* \* \* \* \* \*

In addition, we think it is clear the automobile which struck appellant and his family was "designed for use principally off public roads" for the reason it simply could not qualify under the provisions of Article 6701d, Sections 108–139a, Vernon's

Ann.Tex.Civ.St. These statutes require automobiles which operate on public highways to be equipped with such safety equipment as horns, tail and head lights, signalling equipment, etc. The vehicle was completely lacking in the basic required equipment to permit it to be operated on public roads and highways. In view of the holding of the *Beagle* case, together with these additional facts, we conclude that the vehicle in question was designed "principally for use off public roads" and that, therefore, is not an automobile within the meaning of the policy.

Judgment of the trial court is affirmed.