Jimmy Ray **WILLIAMS**, Petitioner,

v.

**CIMARRON INSURANCE CO., Inc.,**
Respondent.

No. A–11406.

Supreme Court of Texas.

July 20, 1966.

Rehearing Denied Oct. 5, 1966.

Peery, Wilson & Jameson, Norman Whitlow, with above firm, Wichita Falls, W. James Kronzer, Houston, for petitioner.

L. W. Anderson, Dallas, for respondent.

NORVELL, Justice.

This is an action to recover medical, hospital and funeral expenses under the medical payments provision of an automobile insurance policy issued by Cimarron Insurance Co., Inc. The facts are stipulated and the controlling question is whether the stock car racer here involved is comprehended by the definition of "automobile" contained in coverage C of the policy. The trial court held that it was not and rendered judgment that plaintiff, Jimmy Ray Williams, take nothing against the insurance company. The Court of Civil Appeals at Amarillo affirmed. 400 S.W. 2d 805. In our opinion the judgment of the Court of Civil Appeals was correct.

### The Stipulated Facts

On July 4, 1964, Jimmy Ray Williams, his wife and their minor son, James Richard Williams, were spectators at a race track located on private property at an amusement park near Craterville, Oklahoma, when one of the stock car racers careened through the fence and struck all the members of the Williams family. Mr. and Mrs. Williams sustained serious personal injuries and James Richard was killed. The racer which struck them was a stripped-down 1947 Ford sedan with a 1954 Mercury motor owned by Carl Osborn and Robert R. Riddle. The vehicle had been originally manufactured by the Ford Motor Company, but it had been modified by Robert R. Riddle about a year prior to the accident and converted into a stock car racer and after modification, the vehicle had no tail lights, headlights or window glass. A screen wire served as a species of windshield. In front the car had a safety bar and two angle irons coming to a point about two and one-half (2½) feet

in front of the radiator, but it had no fenders, bumpers or horn. It was equipped with heavy-duty tie rods and spindles and oversized tires. The speedometer cable was not connected and it was either towed or carried on a trailer to and from the race track. The vehicle was not licensed by the State of Oklahoma or any other state for operation upon the public roads and highways.

### The Policy Provisions

The pertinent provisions of the policy are as follows: (The italicized portions of the policy provisions form the basis of the dispute in this case.)

"*Coverage C—Automobile Medical Payments*: To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services: * * *

"*Division 2*. To or for each insured who sustains bodily injury, sickness or disease, caused by accident, while in or upon, or while entering into or alighting from, or *through being struck by, an automobile*. * * *

"IV. *Automobile Defined*
[U]nder division 2 of coverage C, the word 'automobile' means a land motor vehicle or trailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or *other equipment designed for use principally off public roads, except while actually upon public roads*, or (2) a land motor vehicle or trailer while located for use

as a residence or premises and not as a vehicle."

### Opinion

The stock car racer which figured in the tragedy giving rise to this lawsuit is undoubtedly a land motor vehicle not operated on rails or crawler treads. It was an automobile within the usual meaning of the term,[1] but the controlling question is whether such racer comes within the policy clause which states that the term "automobile" does not mean "(a) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads. * * *"

Upon the date of the accident, the racer was a vehicle designed for use principally off public roads. It was so equipped or under-equipped that it could neither be licensed nor lawfully used upon the public highways. The plaintiff (petitioner) urges here that the words "other equipment" must be construed as meaning something similar to a "farm type tractor" under the rule of *ejusdem generis* or *noscitur a sociis*. It is argued that the stock racer being a land motor vehicle and not being a piece of equipment similar to a farm type tractor, one who sustains bodily injury by being struck by such racer may recover under the Automobile Medical Payments clause of the policy. As further supporting this construction, it is said that a farm type tractor or equipment similar thereto may upon occasion be lawfully driven upon the public roads while the racer could not, because it lacks the basic equipment necessary to qualify it for public road use. Article 6701d, §§ 108–139a, Vernon's Ann.Tex. Stats. It is said that, "Unless it can be

1. See generally, Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957 (1943) [oil derrick pulled on rollers by caterpillar tractor]; Pennell v. United Insurance Co., 150 Tex. 541, 243 S.W.2d 572 (1951) [jeep]; Mutual Benefit Health & Accident Ass'n v. Hudman, 385 S.W.2d 509 (Tex.Civ.App.1965, rev'd on other gnds 398 S.W.2d 110 [Tex.Sup. 1965]) [pickup truck]; Combined American Insurance Company v. Ganzer, 350 S.W.2d 211 (Tex.Civ.App.1961, no writ hist.) [truck mounted crane]. Cf. Annotations: 12 A.L.R.2d 598, "Vehicle" within meaning of insurance coverage or exceptions; 38 A.L.R.2d 867, What is an "automobile" or a "car" within coverage of accident policy; 74 A.L.R.2d 1264, What is an "automobile" or a "car" within coverage of automobile liability policy.

argued. * * * that the insurer intended to cover operations upon a public road in violation of law, then it is abundantly clear that what the policy provisions exclude is that type of 'other equipment' that can be operated upon the roadway on limited occasions."

The petitioner cites the case of Smith v. Stewart, 21 A.D.2d 551, 251 N.Y.S.2d 342 (1964) in support of his position. The pertinent policy provision defined automobile as being "a land motor vehicle, trailer or semi-trailer", but further provided that "the term 'automobile' does not include any crawler or farm-type tractor, farm implement and, if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads." The vehicle involved was a 1941 Chevrolet coupe which had its doors, headlights, fenders and hood removed; its rear seating compartment cut away and a homemade stake body substituted therefor. The Supreme Court of New York held that:

"The vehicle involved aptly fits the policy's definition of an automobile. Coverage is not provided while the vehicle is being operated or used away from the insured's premises. That such was its role when the anterior accident occurred is conceded. * * * An unambiguous policy provision confines the use of such a vehicle to the premises of the insured or 'to the ways immediately adjoining' if he is to have coverage for its negligent operation. Nor can we adopt the rationale urged by appellant that the vehicle was a 'farm implement' and thus saved from the operation of the exclusion clause of the policy."

Petitioner urges that the secondary holding (relating to farm implement) is directly contrary to the position of the intermedi-

ate Court in the instant case and argues that:

"Patently the subject vehicle was 'designed for use * * * off public roads', notwithstanding its use thereon at the time of the occurrence. If there was a disconnected purpose involved in the definitional terms in Smith v. Stewart, such as is contended by Respondent, a contrary result would have been indicated. Rather clearly the Plaintiff and the Court interpreted the italicized language as modifying and describing only farm type equipment." [2]

We are unable to agree with petitioner's argument. To us, the restrictive proviso designates two distinct classifications. It plainly states that the word automobile does not mean "a farm type tractor or other equipment designed for use principally off public roads". The phrase "designed for use principally off public roads" does not convey the notion that something similar to a farm type tractor was intended by the contracting parties. The Court of Civil Appeals cited and quoted at some length from Beagle v. Automobile Club Insurance Co., Ohio Com.Pl., 176 N.E.2d 542 (1960). This is a decision of the Court of Common Pleas of Ohio and is the nearest case upon the facts that has come to our attention. While its value as a precedent is persuasive only, we are of the opinion that the decision of the Ohio Court correctly construed the restrictive clause which is now before us in this case. We need not repeat the discussion of *Beagle* which is contained in the opinion of the Court of Civil Appeals other than to quote the following excerpt:

"[I]f the exception was just the words 'a farm type tractor or other equipment' there would be some substance to this claim, but the language is not general but specifies that such equipment be designed for use principally off pub-

2. Cf. Lang v. General Insurance Company of America, 268 Minn. 36, 127 N.W. 2d 541 (1964), Beeler v. Pennsylvania Threshermen & Farm Insurance Company, 48 Tenn.App. 370, 346 S.W.2d 457 (1960).

lic roads. That, in effect is true also of farm tractors—they are designed for use principally on the farm and not on the highways. The Court feels this exception is not ambiguous and means just what it says. This auto racer was designed principally for use off the public road, and therefore is not an automobile within the meaning of the definition in the policy."

The judgment. of the Court of Civil Appeals affirming the judgment of the trial court is affirmed.