**James Darrell STALLCUP,**
**Plaintiff-Appellant,**

v.

**Ira J. DUNCAN and Allstate Insurance**
**Company, Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Oct. 10, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 10, 1984.

R.Y. Jarvis, Memphis, for plaintiff-appellant.

T. Tarry Beasley, II, David E. Gordon, Memphis, for Allstate.

Alan S. Klieman, Memphis, for Duncan.

CRAWFORD, Judge.

Plaintiff Stallcup appeals from the order of the trial court granting summary judgment for defendants Ira J. Duncan and Allstate Insurance Company. Plaintiff sustained personal injuries in a collision of his three-wheel cycle with defendant Duncan's four-wheel dune buggy, and filed a complaint for damages against defendants. Process was served on Allstate Insurance Company (hereinafter Allstate) pursuant to T.C.A. § 56-7-1206, because Duncan was uninsured. Allstate's answer denies that plaintiff is entitled to uninsured motorist coverage by virtue of certain provisions of the policy which we will discuss hereinafter. The contract action against Allstate was severed from the tort case for separate trial. Allstate then filed a motion for summary judgment which the court granted, and this appeal resulted.

There is no dispute as to the facts, which are as follows:

Plaintiff was riding a three-wheel cycle when it collided with a four-wheel dune buggy, owned and driven by defendant Duncan. The accident occurred, as described by plaintiff in his brief, "several hundred feet west of Covington Pike Bridge that spans the Wolf River in an area that is made up of some dirt roads and/or trails that run along beside the area of the Wolf River. These road and/or trails are used by the general public for the purpose of riding various types of motor vehicles, some licensed for road use, and some not so licensed."

Neither of the vehicles involved in this collision was licensed for road use, and the undisputed facts establish that the dune buggy driven by defendant was a vehicle that was not designed for use on public roads.

Plaintiff bases his appeal upon two theories. First he contends that the defendant's vehicle, a dune buggy, is an uninsured vehicle within the contract terms of the plaintiff's policy. Second, plaintiff asserts that Allstate's exclusion of coverage for injuries sustained by vehicles designed for use off public roads is inconsistent with state statutes. Reasoning further, he alleges that where there is an inconsistency, as there is here, the statutory definition should control.

I. Plaintiff was insured under one or more automobile liability insurance policies issued by Allstate Insurance Company, each of which contains uninsured motorist protection. The parts of the policies pertinent to the case before us are as follows:

### SECTION II

PROTECTION AGAINST BODILY INJURY AND OPTIONAL PROPERTY DAMAGE BY UNINSURED AUTOMOBILES

COVERAGES SS—Uninsured Motorists Insurance

Allstate will pay all sums which the insured ... shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of (a) bodily injury, ... sustained by the insured, ... arising out of the ownership, maintenance or use of such uninsured automobile....

*Definitions of words used under this Section*

\* \* \* \* \* \*

3. *"uninsured automobile"* means:

(a) a motor vehicle with respect to the ownership, maintenance or use of which, there is, in at least the amount specified

by the financial responsibility law of the state in which the insured automobile is principally garaged, no automobile liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is an automobile liability bond or insurance policy applicable at the time of the accident but the company writing the same either has denied coverage thereunder or is or becomes insolvent;

\*    \*    \*    \*    \*    \*

but the term *"uninsured automobile"* shall not include:

\*    \*    \*    \*    \*    \*

(v) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.

\*    \*    \*    \*    \*    \*

Specifically, plaintiff asserts that the exclusion "a farm type tractor or equipment designed for use principally off public roads ..." excludes only a farm type tractor or other equipment used therewith.

■ In interpreting an insurance contract the language of the contract shall be given its usual and ordinary meaning, *See Parker v. Provident Life and Accident Insurance Company,* 582 S.W.2d 380, 383 (Tenn.1979), and the court should not create an ambiguity when none exists. *Inman v. Life & Cas. Ins. Co.,* 164 Tenn. 12, 45 S.W.2d 1073 (1932). In following these rules of contract construction, we think it is quite clear that the description of a "farm type tractor" is unequivocally a vehicle that is "designed for use principally off public roads," and is surely recognized universally as such a vehicle. With that in mind, we can only conclude that the use of the word "equipment" was intended to describe other types of vehicles that might be designed for use principally off public roads. We have been unable to find any Tennessee case supporting this reasoning, but a case closely analogous to the case at bar is *Williams v. Cimarron Insurance Company,* 406 S.W.2d 173 (Tex.1966).

■ *Williams* involved an action to recover medical, hospital and funeral expenses under the medical payment provision of an automobile insurance policy. The insured was injured while driving a stock car racer, and the question presented in the case was whether this vehicle was within the definition of "automobile" and covered under the policy. The policy definition of automobile as set out in the opinion was:

> [T]he word automobile means a land motor vehicle or trailer not operated on rails on crawler-treads, but does not mean "(1) a farm type tractor or *other equipment designed for use principally off public roads, except while actually upon public roads....*" (Emphasis in original).

*Id.* at 174.

The plaintiff-insured contended in *Williams* that the words "other equipment" must be construed as meaning something similar to a "farm type tractor" under the rule of *ejusderum generis* and argued that the stock racer, being a land motor vehicle and not being a piece of equipment similar to a farm type tractor, would not be an excluded vehicle for purposes of recovery under the medical payment clause of the policy. The Texas court in considering plaintiff's contention said:

> We are unable to agree with petitioner's argument. To us, the restrictive proviso designates two distinct classifications. It plainly stated that the word automobile does not mean "a farm type tractor or other equipment designed for use principally off public roads." The phrase "designed principally off public roads" does not convey the notion that something similar to a farm type tractor was intended by the contracting parties.

*Id.* at 175.

We agree with the reasoning of the Texas court and hold that the exclusion from the definition of "uninsured automobile" in plaintiff Stallcup's policy specifically excludes defendant Duncan's vehicle as an uninsured automobile.

II. Plaintiff further contends that in any event the vehicle of defendant Duncan is not excluded as an uninsured motor vehicle or uninsured automobile because of the statutory definition of such vehicle contained in T.C.A. § 56–7–1202 (1983).

*"Uninsured motor vehicle" defined.* —For the purpose of this coverage, the term "uninsured motor vehicle" means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made.

Plaintiff argues that, since this definition does not specifically exclude a vehicle such as the one involved in the accident, the statute is controlling as to whether coverage is afforded by the policy. We disagree with plaintiff in this regard.

■ The question presented by plaintiff's assertion is one of first impression in this state. For its answer, we look first to the general rules of statutory construction, and second to the application of these rules to the interaction between two pertinent sections of the Tennessee code.

As pointed out by our Supreme Court in *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn. 1975):

The premier rule of statutory construction is to ascertain and give effect to the legislative intent. *Lawrence v. Lawrence*, 35 Tenn.App. 648, 250 S.W.2d 781 (1952). In doing this we look to the general purpose to be accomplished. *State v. Yoakum*, 201 Tenn. 180, 297 S.W.2d 635 (1956).

*Id.* at 676.

■ The intent and purpose of the Uninsured Motorist Act is to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist. *See Glover v. Tennessee Farmers Mutual Insurance Co.*, 225 Tenn. 306, 468 S.W.2d 727 (1971). Uninsured motorist insurance coverage is an adjunct to the automobile liability insurance policy. *See* T.C.A. § 56–7–1201 (Supp.1983). Thus, the insured is allowed to purchase uninsured motorist coverage for the protection that he would have had if the alleged tortfeasor had assumed his own financial responsibility by purchasing liability insurance.

Following this reasoning we turn our attention to the second applicable statutory act—the Tennessee Financial Responsibility Law of 1977. This act, at § 55–12–101 *et seq.* was referred to in the Uninsured Motor Vehicle Coverage Act, § 56–7–1201 (1980) and is cited in the 1982 Act as well. T.C.A. § 55–12–101 *et seq.* (1983). The Financial Responsibility Act of 1977 and its predecessor address the financial responsibility of persons causing motor vehicle accidents. Unquestionably, one of the methods for providing financial responsibility is the use of automobile liability insurance policies. Thus, the financial responsibility law and the provisions pertaining to liability insurance, including uninsured motorist coverage, are closely related.

■ Continuing to draw parallels between these two acts and their interrelationship, we point next to the definition of "motor vehicle" as contained in the Financial Responsibility Act. That definition is "every self-propelled vehicle which is designed for use upon the highway." *See* § 55–12–102 (1980) (now § 55–12–102 (Supp. 1983)) Here we must assume the legislature, in providing the definition of "uninsured motor vehicle" in the uninsured motorist acts of 1982, T.C.A. § 56–7–1202 (Supp.1983), was well aware of the definition of motor vehicle as used in connection with matters relating to automobile accidents. It is logical to assume that the legislature intended for this same definition to carry over into the provisions of insurance policies that likewise involve the payment of damages for automobile accidents. Therefore, we hold that the definition of uninsured motor vehicle set forth in T.C.A. § 56–7–1202 (Supp.1983) is amplified to

include the definition of motor vehicle as "every self-propelled vehicle which is designed for use upon the highway"—the financial responsibility law definition. Since the four-wheel dune buggy driven by defendant Duncan was not designed for use upon the highway, and was not being operated upon a public road, the vehicle does not come within the definition of an uninsured motor vehicle under the statute, nor under the policy of insurance in question.

Although not binding on this court, a limited number of decisions from other states support our views and particularly the rationale of utilizing the financial responsibilities laws to refine the definitions in automobile liability policies. Therefore, we fortify our decision with an analogous Missouri case and the judicial reasoning therein as well as the Missouri court's application of the statutory provision for financial responsibility.

In *Meeks v. Burkbuegler*, 632 S.W.2d 24 (Mo.Ct.App.1982), the suit resulted from an off-road accident between a motorcycle and a dune buggy. The operator of a motorcycle had an insurance policy with State Farm Mutual Automobile Insurance Company which contained uninsured motorist coverage. Since the owner and operator of the dune buggy did not have insurance, the operator of the motorcycle contended he was entitled to have coverage under his State Farm policy providing uninsured motorist coverage. The pertinent part of the State Farm policy is set out in the opinion as:

"Uninsured Motor Vehicle—Means:

1.  A land motor vehicle not insured or bonded for bodily injury liability at the time of the accident; ... An uninsured motor vehicle does not include a land motor vehicle:

    .    .    .    .    .

5.  designed for use mainly off public roads except while on public roads; ..."

*Id.* at 26.

In *Meeks*, the insured contended, among other things, that the clause in the policy was void as against the public policy of the uninsured motorist statute, which is to provide the insured motorist with at least the same amount of protection he would have been provided if the tortfeasor had complied with the motor vehicle safety responsibility law. The Motor Vehicle Safety Responsibility Law in Missouri requires the posting of security or the suspension of an operator's license upon the report of a motor vehicle accident. This is not unlike the financial responsibility statute in our state. The requirement in both states is to report a "motor vehicle accident." The definition of motor vehicle set out in the Safety Responsibility Law of Missouri is "a self-propelled vehicle which is designed for use upon a highway, including trailers designed for use with such vehicles...." Mo.Rev. Stat. 303.020 (1978). This definition is identical to the definition contained in the Tennessee Financial Responsibility Law. The Missouri court held that the dune buggy involved was not a motor vehicle within the meaning of the statute and the policy, and the policy clause was not void as against public policy. For similar results, *see also Walcott v. Hawkeye-Security Insurance Co.*, 201 N.W.2d 817 (Neb.1972).

We affirm the order of the trial court granting summary judgment to Allstate. The costs of the appeal are assessed against the appellant.

TOMLIN and HIGHERS, JJ., concur.