IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 23, 2009 Session

## ANDREA S. MARTIN v. PATRICIA L. WILLIAMS, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002629-07     Karen R. Williams, Judge**

_____

**No. W2008-01509-COA-R3-CV - Filed July 30, 2009**

_____

The central issue in this case is which of two insurance companies is required to provide uninsured motorist coverage to the Plaintiff, who was injured in an automobile accident. The trial court granted summary judgment to the company through which Plaintiff had automobile insurance, finding that the company insuring the automobile in which Plaintiff was a passenger held the primary policy. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Stephen C. Barton, Memphis, TN, for Appellant, Shelter Insurance Company

Glenn K. Vines, Jr., Laura M. Owings, Memphis, TN, for Appellee, Andrea S. Martin

Darryl D. Gresham, Heather W. Fletcher, Memphis, TN, for Appellee, Metropolitan Group Property and Casualty Insurance Company

**OPINION**

# I. FACTS & PROCEDURAL HISTORY

On May 17, 2007, Andrea Martin ("Plaintiff") filed a Complaint for personal injuries allegedly sustained in a June 7, 2006 automobile accident.[1] At the time of the accident, Plaintiff was a seventeen year-old passenger in a vehicle being driven by Maurice Brittmon, and co-owned by Maurice and Chana Brittmon ("Brittmon vehicle"). The Brittmon vehicle collided with a vehicle being driven by Patricia Williams.

Williams is uninsured. The Brittmon vehicle is insured by Shelter Insurance Company ("Shelter").[2] Plaintiff has an automobile liability policy with Metropolitan Group Property and Casualty Insurance Company ("MetLife"), which provides uninsured motorist ("UM") coverage to Plaintiff as a passenger in the Brittmon vehicle.

In her Complaint, Plaintiff named Patricia Williams, Maurice Brittmon and Chana Brittmon as defendants, and alleged that both Williams and Maurice Brittmon negligently operated their vehicles. Plaintiff also served MetLife and Shelter under the UM provisions of their respective policies.[3]

On July 23, 2007, Maurice and Chana Brittmon filed an Answer denying liability. Thereafter, on August 6, 2007, Shelter, as the insurer of the Brittmon vehicle, answered Plaintiff's Complaint and specifically denied that the policy issued to Chana Brittmon provided coverage to Plaintiff. On August 30, 2007, MetLife filed an Answer, admitting that it issued an automobile liability insurance policy to Plaintiff's parents, which was in force at the time of the accident, and which contained a provision providing UM coverage "to its insured and others who met the policy definition of an insured and/or covered person." Plaintiff was listed as an insured household driver under the MetLife policy.

Shelter filed a Motion for Summary Judgment on September 10, 2007, claiming that its policy did not require it to provide UM coverage to Plaintiff. Plaintiff filed a Motion for Partial Summary Judgment on January 15, 2008, asking the trial court to find that MetLife's UM coverage was primary. MetLife, then, filed a Motion for Summary Judgment on February 18, 2008, asking

---

[1] Plaintiff's alleged injuries include "multiple, serious, and disabling injuries to her body as a whole, including, but not limited to her left leg, right kidney, right eye, face, neck, and disfigurement and scarring[;]" past and present pain; medical expenses; loss of earnings and/or loss of earning capacity; loss of enjoyment of life; and mental anguish.

[2] Chana Brittmon was the named insured on the Shelter Policy. It is unclear whether Maurice Brittmon was listed as an additional insured.

[3] The service of process by which Shelter and MetLife were made parties to the suit was pursuant to Tennessee Code Annotated section 56-7-1206(a), which provides:

> Any insured intending to rely on the coverage required by [the uninsured motorist vehicle coverage statutes] shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant.

the court to affirmatively rule that Shelter was required to provide UM coverage and that its coverage was primary.

The motions were argued on February 21, 2008. On June 27, 2008, the trial court entered an Order[4] granting MetLife's Motion for Summary Judgment, finding that Shelter's UM policy was primary, and denying Shelter's Motion for Summary Judgment. Specifically, the court found as follows:

> Plaintiff, Andrea S. Martin, was a passenger in a car driven by Defendant, Maurice Brittmon, upon which Shelter Insurance issued a policy that included uninsured motorist coverage. Further, said policy provides, at page 15, that a passenger in the insured vehicle is an insured for purposes of medical and dental coverage. Additionally, this case is controlled by Tennessee Code Annotated, Section 56-7-1201(b)(3). Even in the event that Shelter Insurance's policy did not by its wording cover Plaintiff, Andrea S. Martin, as a passenger in the covered vehicle, the statute would override the policy.

It is from this Order which Shelter now appeals.

## II. ISSUES PRESENTED

Shelter has timely filed its notice of appeal and presents the following issue for review, summarized as follows:

1. Whether, for the following reasons, the trial court erred in holding that Shelter's policy is the primary policy to provide UM coverage to Plaintiff, and in refusing to enforce the provision of the Shelter policy which excluded Plaintiff from coverage:

   a. Insurance policies should be construed and enforced like other contracts;

   b. Plaintiff is not entitled to UM coverage under the clear, unambiguous terms of the Shelter policy;

   c. Shelter's policy complies with Tennessee's UM Statute; and

   d. Shelter's policy does not violate Tennessee public policy.


Additionally, Plaintiff timely filed a notice of appeal and presents the following issue for review:

---

[4] This Order was made final pursuant to Tennessee Rule of Civil Procedure 54.02.

2.	Whether under the Tennessee UM Statute, an automobile is being "used" by an individual who is traveling in it, regardless of whether it is being operated by him or her or another.

For the following reasons, we reverse the decision of the circuit court.

### III. STANDARD OF REVIEW

In the instant case, we are asked to review the trial court's grant of summary judgment to a defendant. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law. ***Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.***, 59 S.W.3d 63, 68 (Tenn. 2001). Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings. ***See Webber v. State Farm Mut. Auto. Ins. Co.***, 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor. ***Staples v. CBL & Assocs.***, 15 S.W.3d 83, 89 (Tenn. 2000).

### IV. DISCUSSION

#### A. Is Plaintiff Covered Under the Shelter Policy?

#### 1. Policy's Plain Language

On appeal, Shelter argues that the trial court erred in finding that its policy provided primary UM coverage to Plaintiff, because Shelter contends that "[P]laintiff is not entitled to [UM] coverage under the clear, unambiguous terms of the Shelter policy." Thus, we begin by looking at the policy at issue.

The Shelter policy begins with a general "Definitions" section,[5] followed by five "Parts." Each of the five Parts list "additional definitions" as used in each respective Part. Part IV governs Uninsured Motorists, and provides coverage as follows:

> If an **insured** sustains **bodily injury** as a result of an **accident** involving the **use** of a **motor vehicle**, and is entitled to **damages** from any **person** as a result of that

---

[5]The general "Definitions" section provides this explanation:

In this policy, the words shown in bold type have the meanings stated below unless a different meaning is stated in a particular coverage or endorsement. Words in bold type which are derived from a defined word have the same root meaning. The plural version of a defined word has the same meaning as the singular if it is also bolded. If any of these same words are used but not printed in bold type, they have their common dictionary meaning.

-4-

**bodily injury**, **we**, will pay the **uncompensated damages** subject to the limit of **our** liability stated in this Coverage.

Part IV also provides an "additional definition[] [as] used in Part IV[,]" for the term "insured":

> **Insured** means:
> (a) **You**;
> (b) any **relative**; and
> (c) any **individual** listed as an "additional listed insured" in the Declarations, but only with respect to that **individual's use** of the **described auto**;
> (d) any other **person using** the **described auto** with **permission**. However, the limit of **our** liability for **individuals** who become **insureds** solely because of this subparagraph, will be the minimum limits of uninsured motorist insurance coverage specified by the **uninsured motorist law** or **financial responsibility law** applicable to the **accident**, regardless of the limit stated in the Declarations.

Shelter claims that because Plaintiff does not fit under the categories of "you," a "relative," an "additional listed insured," or "person using the described auto," Shelter is not obligated to extend UM coverage to her. On the date of the accident, Plaintiff was not listed as a named insured or as an additional insured under the Shelter policy, nor was she a relative of a named insured. She also was not "using the described auto with permission" as defined in the policy.[6] Thus, we find that the Shelter policy clearly and unambiguously defines an "insured" for UM coverage, and Plaintiff does not meet that definition. However, our inquiry does not end here.

### 2. Tennessee's Uninsured Motorist Statute

### a. Tennessee Code Annotated 56-7-1201(a)

MetLife argues that although Plaintiff does not meet Part IV's definition of an "insured," Tennessee Code Annotated section 56-7-1201, *et seq.* (sometimes hereinafter "UM Statute"), nonetheless mandates coverage.

Part II of the Shelter Policy, concerning "Auto Medical Payments" ("Medpay"), defines "insured" as used within Part II. Because "occupants" are "insured" for purposes of Part II, Plaintiff meets the definition of an "insured" under Part II. MetLife argues that "[t]his inclusion . . . is

---

[6] Under the policy's "general" definitions, "use" is defined as "operation and maintenance." "Operate" is further defined as "physically controlling, having physically controlled, or attempting to physically control, the movements of a vehicle." "Maintenance" is defined as "the performance of services which are necessary to keep a **motor vehicle** in working order or to restore it to working order. It does not include the installation or servicing of equipment which is not usual and incidental to the **operation** of an **auto**.

sufficient to qualify Plaintiff as an insured 'under' Shelter's 'automobile liability insurance policy' for purposes of T.C.A. § 56-7-1201(a)[,]" which provides:

> Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, *shall include uninsured motorist coverage*, subject to provisions filed with and approved by the commissioner, *for the protection of persons insured under the policy* who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

**Tenn. Code Ann. § 56-7-1201(a) (2008)** (emphasis added). Essentially, MetLife argues that because Plaintiff is a "person[] insured under the policy"–albeit under the Medpay provision–that, pursuant, to Tennessee Code Annotated 56-7-1201(a), Shelter must extend UM coverage to her. MetLife states that "[t]he term 'automobile liability insurance policy' [as used in Tennessee Code Annotated section 56-7-1201(a)] clearly refers to an entire policy of automobile insurance, including its liability provisions, uninsured motorist provisions, medical payment provisions, and any other provisions contained therein." In support of its argument, MetLife cites Tennessee Code Annotated section 56-7-1301(a)(2), which defines "private passenger automobile liability insurance policy" as a "policy delivered or issued for delivery in this state, insuring a natural person as named insured, or one (1) or more related individuals resident of the same household[.]"[7] MetLife further cites Part (c) of section 56-7-1301 which states: "This part applies only to that portion of an automobile liability policy insuring against bodily injury and property damage liability and to the provisions in the policy, if any, relating to medical payments and/or uninsured motorist coverage." **Tenn. Code Ann. § 56-7-1301(c) (2008)**. This language, MetLife contends, "leaves no doubt that the legislature intended the term 'automobile liability insurance policy' to refer to the whole policy, including provisions in the policy related to medical payments."

Shelter, however, interprets Tennessee Code Annotated section 56-7-1201(a) to require UM protection only for those persons who are insured under the policy's liability provision. Shelter points out that the face of the statute expressly states that "Every automobile *liability* insurance policy . . . shall include uninsured motorist coverage . . . for the protection of *persons insured thereunder*." **Tenn. Code Ann. § 56-7-1201(a)** (emphasis added). Shelter also argues that its interpretation is reinforced by Tennessee Code Annotated section 56-7-1201(a)(1), which states, "The limits of the uninsured motorist coverage shall be equal to the bodily injury *liability* limits stated in the policy." Furthermore, Shelter claims that the purpose of the UM Statute is to provide liability coverage, while Medpay benefits, in constrast, are provided irrespective of fault. The "Automobile Liability" portion of the Shelter Policy, Part I, defines "insured" as follows:

---

[7] Interestingly, we note that the Shelter policy is titled "Automobile Insurance Policy," rather than "Automobile Liability Insurance Policy."

As used in this Part, **insured** means:

(1) **You**, with respect to **your ownership** or **use** of the **described auto** and **your use** of a **non-owned auto**;

(2) any **relative**, with respect to his or her **use** of the **described auto** or a **non-owned auto**;

(3) any **individual** who is:

> (a) related to **you** by blood, marriage, or adoption, who is primarily a resident of, and actually living in, **your** household, including **your** unmarried and unemancipated child away at school; or

> (b) a foster child in **your** legal custody for more than ninety consecutive days immediately prior to the **accident**; but only with respect to that **individual's use** of the **described auto**;

(4) any **individual** listed in the Declarations as an "additional listed insured," but only with respect to that **individual's use** of the **described auto**; and

(5) any **individual** who has **permission** or **general consent** to **use** the **described auto**. However, the limits of **our** liability for **individuals** who become **insureds** solely because of this subparagraph, will be the minimum limits of liability insurance coverage specified by the **financial responsibility law** applicable to the **accident**, regardless of the limits stated in the Declarations.

The "General" definitions portion of the Shelter policy defines "insured" as:

> the **person** defined as **insured** in, or with reference to, the specific coverage or endorsement under which the coverage is sought.

Thus, Shelter maintains that because Plaintiff is not "insured" as defined by the Shelter policy's liability provision, Part I, Tennessee Code Annotated section 56-7-1201(a) does not require Shelter to extend UM coverage to her.

First, we reject MetLife's contention that the UM Statute requires that all automobile liability insurance policies provide UM coverage. In arguing that UM coverage is mandated in all automobile liability policies, MetLife cites a portion of Tennessee Code Annotated section 56-7-1201, but fails to include the relevant language that "any named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage[.]" **Tenn. Code Ann. § 56-7-1201(a)(2)**. Based on the insured's ability to decline UM coverage, the UM Statute mandates only that UM coverage be *offered* rather than *included* in every policy. *See Renfro v. Doe*, 979

S.W.2d 311, 313 (Tenn. Ct. App. 1998) (citation omitted) ("Tennessee's uninsured motorist law requires the insurer to offer uninsured motorist coverage at least equal to the limit carried by the named insured for general liability coverage.").

We also reject MetLife's argument that qualifying as an "insured" under any provision of an automobile insurance policy requires that such "insured" be afforded coverage under the policy's UM provision. As cited by Shelter above, the plain language of the UM Statute does not support such an interpretation. Furthermore, we find that Tennessee Code Annotated section 56-7-1301's reference to medical payments does not evidence a legislative intent that "automobile liability insurance policy" refer to "the whole policy." Rather, the reference to medical payments is provided only to state that portions of automobile liability policies relating to medical payments are not excluded from Part 13, concerning policy cancellation. *See* **Tenn. Code Ann. § 56-7-1301**.

Both Shelter and MetLife rely upon ***Christenberry v. Tipton***, 160 S.W.3d 487 (Tenn. 1995) to support their respective positions concerning the scope of Tennessee Code Annotated section 56-7-1201. Thus, we feel inclined to discuss the case. In *Christenberry*, the plaintiff was injured when the vehicle in which she was a passenger was forced off the road by an unidentified motorist. ***Id.*** at 488. The plaintiff sued for UM benefits under an insurance policy issued to her ex-husband and his company. ***Id.*** The trial court granted summary judgment to the insurance company, finding that the plaintiff was not insured under the policy. ***Id.*** at 488-89. On appeal, the plaintiff contended that summary judgment was inappropriate, as a question of fact existed as to whether her inclusion on a list of "drivers" within the policy entitled her to liability coverage under the policy, and therefore, to UM coverage pursuant to the UM Statute. ***Id.*** at 493. The Court of Appeals affirmed the trial court's grant of summary judgment, but the Supreme Court reversed, finding that a genuine issue of material fact existed as to whether those persons listed as "drivers" were "named insureds." ***Id.*** at 495. In so finding, the Court stated "as we construe the scope of section 56-7-1201, the plaintiff's argument[–that because she is "insured" for liability purposes, she must also be provided UM coverage–]still necessarily rests upon the premise that she was insured under the *liability* portion of the policy at the time of the accident." ***Id.*** at 493. (emphasis added). Based on this language, Shelter insists that UM coverage is triggered under the UM Statute only when the plaintiff is insured for *liability* purposes under the policy. However, MetLife points to the Court's statement that "before the plaintiff can assert any statutory right to uninsured motorist coverage, she must have been insured under the State Auto policy at the time of the accident[,]" ***Id.,*** to support its contention that a plaintiff need not be insured under a policy's liability provision in order to qualify for UM coverage pursuant to the UM Statute. We find that *Christenberry* provides no guidance on the issue at hand. Instead, we find that the aforementioned statements evidence only the Court's belief that summary judgment was inappropriate, as the plaintiff had not yet shown that she was insured under the policy–the liability provision or otherwise–such that the UM Statute could extend UM coverage. Thus, a discussion of whether the UM Statute compelled UM coverage when a plaintiff was covered under a provision other than liability, was premature.

Although we find no cases directly addressing the issue at hand, we find instructive the case of *Younger v. Reliance Ins. Co.*, 884 S.W.2d 453 (Tenn. Ct. App. 1993). In *Younger*, the plaintiff brought an action for the wrongful death of her husband against both an uninsured motorist and the UM carrier for the decedent's employer, Reliance Insurance Company ("Reliance"). *Id.* at 453. The trial court granted summary judgment to Reliance, holding that the decedent was not "insured" under the policy's UM provision. *Id.* This Court agreed that the decedent was not covered by the UM provision, itself, because the decedent was not "occupying" a covered automobile at the time of the accident, as defined in the UM provision. *Id.* at 455-56. However, we then considered whether Reliance violated Tennessee Code Annotated section 56-7-1201(a) by defining "insured" more narrowly for UM coverage, than for liability coverage. *Id.* at 456. We stated that

> it follows that once a person is insured under the liability policy, that person must also be insured under the insured motorist portion of the policy when the damages arise out of "the ownership, maintenance, or use" of the insured vehicle.

*Id.* (quoting Tenn. Code Ann. § 56-7-1201(a)). Because we deemed synonymous the terms used to define "insured" in both the UM and liability provisions, we found in our analysis that decedent was not "insured" under the UM provision sufficient to answer in the negative the question of whether the decedent was "insured" under the liability provision. *Id.* at 457.

We also note our Supreme Court's language in *Mullins v. Miller*, 683 S.W.2d 669, 670 (Tenn. 1984) *superseded by statute on other grounds*, Tennessee Code Annotated section 56-7-1201 *et seq.* (1986), *as recognized in Carr v. Ford*, 883 S.W.2d 68, 69 (Tenn. 1992), in construing the UM Statute:

> [I]t seems to us that the General Assembly has expressed its intention that all damages which can legally be recovered under a liability policy shall also be recoverable under an uninsured motorist policy.

We further note this Court's description of the UM Statute as "basically liability insurance for a third party–the uninsured motorist[.]" *Dupree v. Doe*, 772 S.W.2d 910, 911 (Tenn. Ct. App. 1988) (citing *Glover v. Tenn. Farmers Mut. Ins. Co.*, 225 Tenn. 306, 313, 468 S.W.2d 727, 730 (1971)) ("intent and purpose of statute is to provide protection 'by making the insurance carrier stand as the insurer of the uninsured motorist'").

Based on the foregoing arguments and authorities, we find that Tennessee Code Annotated section 56-7-1201(a)'s reference to "persons insured under the policy[,]" includes only those insured for purposes of liability. Accordingly, because Plaintiff did not qualify as an "insured" under the Shelter Policy's "Part I – Auto Liability" provision, she is not entitled UM coverage pursuant to Tennessee Code Annotated 56-7-1201(a).

### b. Tennessee Code Annotated section 56-7-1201(b)(3)

Alternatively, MetLife claims that Shelter is required to provide Plaintiff UM coverage based on Tennessee Code Annotated section 56-7-1201(b)(3), which provides in part:

> With respect to bodily injury to an insured while occupying an automobile not owned by the insured, the following priorities of recovery under uninsured motorist coverage apply:

> (A) The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage[.]

MetLife maintains that because "Shelter has the uninsured motorist coverage on the vehicle in which Plaintiff Martin was an occupant at the time of the accident. . . . it is clear that Shelter must provide the primary uninsured motorist coverage to Plaintiff Martin, who is an uninsured under Shelter's policy and an occupant o[f] the vehicle covered by Shelter."

MetLife also argues that even if Plaintiff is not "insured" under the Shelter policy, Tennessee Code Annotated section 56-7-1201(b)(3)'s use of "the word 'shall' indicates that the legislature intended to mandate that Shelter and other insurers who insure vehicles in the state of Tennessee provide uninsured motorist coverage to occupants of the vehicle and that this coverage be primary." Thus, because the Shelter policy conflicts with section 56-7-1201(b)(3) and the intent of the UM Statute–to protect those injured by uninsured motorists–MetLife contends that "the statutory mandate must prevail, and Shelter must afford primary uninsured motorist coverage to Plaintiff[.]"

Finally, MetLife contends that even if Plaintiff is not "insured" under *Shelter's* policy and section 56-7-1201(b)(3) does not mandate UM coverage, Shelter is nonetheless required to extend UM coverage to Plaintiff, as Plaintiff is insured under *MetLife's* policy. MetLife states "nowhere in section (b)(3) or (b)(3)(A) does it state that the uninsured motorist coverage on the vehicle in which the occupant was injured will be the primary coverage **only if** the occupant is covered as an 'insured' **by the vehicle's policy**."

Shelter counters by arguing that

the purpose of [Tennessee Code Annotated section 56-7-1201(b)(3)] is to prioritize between <u>available</u> UM coverages with respect to injured passengers. The statute's applicability presupposes more than one available policy. In such a case, it follows Tennessee's basic scheme, which is that the coverage on the vehicle is primary. If there is only one applicable policy, as is the case here, there is nothing to prioritize between, and the provision has no applicability or effect.

(internal citation omitted).

We find that Tennessee Code Annotated section 56-7-1201(b)(3) is inapplicable to the case at hand, as its plain language evidences its purpose only to prioritize between available UM coverages, rather than to create UM coverage.

### 3. Public Policy

Both Plaintiff and MetLife state that the purpose of the UM Statute is to protect persons injured by uninsured motorists. MetLife states that "it is the intent of the legislature that the innocent passenger of a covered vehicle would at all times be entitled to uninsured motorist coverage." Shelter's narrow definition of an "insured," Plaintiff and MetLife claim, conflicts with the legislature's protective intent and violates public policy. MetLife maintains that "if Shelter's policy and arguments are upheld, it is only a matter of time before all insurance companies re-write their policies in such a way that occupants or passengers of an insured vehicle are not provided uninsured motorist coverage by the vehicle's insurance carrier."

To support its argument that its policy does not violate public policy, Shelter points to the policy's approval by the Commissioner of Commerce and Insurance.[8] Although Shelter acknowledges that such approval is not "conclusive," it notes that it is a "factor . . . in determining the validity of policy provisions." *Hill v. Nationwide Mut. Ins. Co.*, 535 S.W.2d 327, 331 (Tenn. 1976). Furthermore, Shelter states that because an insured may select either lesser or no UM coverage, it is illogical to argue that it "is <u>impermissible</u>, and violative of public policy, for the policy to include UM coverage but not provide coverage for every potential recipient[.]"

As stated by our Supreme Court, the "purpose [of the UM Statute] is to provide, within fixed limits, some recompense to innocent persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages." *Shoffner v. State Farm Mut. Auto Ins. Co.*, 494 S.W.2d 756, 758 (Tenn. 1972) *rev'd on other grounds*, 519 S.W.2d 773

---

[8] Every automobile insurance policy issued in Tennessee must be reviewed and approved by the Commissioner of Commerce and Insurance. *See* **Tenn. Code Ann. §§ 56-5-305, 56-7-1201(a)**.

(Tenn. 1975). "The intent and purpose of the Uninsured Motorist Act is to provide protection by making the insurance carrier stand as the insurer of the uninsured motorist." **Stallcup v. Duncan**, 684 S.W.2d 643, 646 (Tenn. Ct. App. 1984) (citing *Glover*, 468 S.W.2d 727). "Thus, the insured is allowed to purchase uninsured motorist coverage for the protection that he would have had if the alleged tortfeasor had assumed his own financial responsibility by purchasing liability insurance." **Id.**

We find that the drafting of the Shelter policy so as to exclude Plaintiff from UM coverage does not violate the public policy of this State. As we see it, the purpose of the UM Statute is to protect those who purchase liability insurance from those who do not. It requires insurance carriers to offer UM coverage to its insureds, but does not mandate that UM coverage be extended to those who have not purchased such a benefit.

### B. Occupant as "User"

Finally, Plaintiff asks this Court to determine "[w]hether under Tennessee common law and the Tennessee Uninsured Motorist Statute . . . an automobile is being 'used' by an individual who is traveling in it, regardless of whether it is being operated by him or her or by another."

At oral argument, after being asked "why it matters to your client which UM coverage is utilized[,]" Plaintiff's counsel conceded that the outcome of the aforementioned issue did not affect her client. Instead, Plaintiff's counsel acknowledged that she was merely seeking an advisory opinion for use in future litigation. In **Shealy v. Policy Studies, Inc.**, No. E2005-01124-COA-R3-CV, 2006 WL 2482984, at *12 (Tenn. Ct. App. Aug. 29, 2006), the eastern section of this Court stated that "'a party's desire for an opinion to be used in future cases is not, by itself, sufficient to render a cause justiciable. Tennessee's courts do not render advisory opinions.'" (quoting *Rodgers v. Rodgers*, No. M2004-02046-COA-R3-CV, 2006 WL 1358394, at *4 (Tenn. Ct. App. May 17, 2006)). Therefore, we decline to address Plaintiff's issue.

### V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for entry of an order granting Shelter's motion for summary judgment. All issues not herein addressed

-12-

are pretermitted. Costs of this appeal are taxed to the Appellees, Andrea S. Martin and Metropolitan Group Property and Casualty Insurance Company, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.